Peter H. Christensen #5453
John M. Zidow #10626
Mason L. Gardner #18382
STRONG & HANNI
102 South 200 East, Suite 800
Salt Lake City, Utah 84111
Telephone:  (801) 532-7080
Facsimile:   (801) 596-1508
pchristensen@strongandhanni.com
jzidow@strongandhanni.com
mgardner@strongandhanni.com
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| BRANDON JENSEN and REBECCA JENSEN,<br><br>Plaintiffs,<br><br>vs.<br><br>CRETE CARRIER CORPORATION, SHAFFER TRUCKING and MICHAEL BEALE,<br><br>Defendants. | **MOTION FOR PARTIAL SUMMARY JUDGMENT OF DEFENDANTS CRETE CARRIER CORPORATION AND MICHAEL BEALE**<br><br>Case No: 1:23-cv-00105<br><br>Judge Tena Campbell |

## INTRODUCTION AND RELIEF REQUESTED

Defendants Crete Carrier Corporation ("Crete") and Michael Beale ("Beale"), pursuant to Fed R. Civ. P. 56, move for partial summary judgment on Plaintiffs' claims that Crete negligently hired, supervised, and retained Beale as an employee and that it negligently entrusted Beale with the operation of its semi-truck (the "truck") on the day of the accident that forms the basis of this lawsuit. To make a prima facie case of negligent hiring, supervision, retention, and entrustment,

Plaintiffs must introduce expert testimony as to the standard of care to be applied to Crete's professional commercial driving operations. As explained below, there is no evidence to support Plaintiffs' direct negligence claims against Crete. Further, even if there were any such evidence, the Plaintiffs did not designate any expert to opine that Crete failed to meet any standard of care to support their direct negligence claims. As a result, partial summary judgment should be granted as to the direct negligence claims against Crete.[1]

## BACKGROUND

This personal injury lawsuit arises out of an April 26, 2023, collision in North Salt Lake involving a Crete truck operated by Beale and a bicycle ridden by Plaintiff Brandon Jensen. There are significant issues of comparative fault and damages being claimed.

Crete is a large commercial transportation company operating approximately 5,000 trucks throughout the country. It is subject to complex laws set forth by the Federal Motor Carrier Safety Administration. These regulations include Parts 40, 380, 382, 383, 387, 390-397, and 399 of Title 49 of the U.S. Code of Federal Regulations, which cover safety standards, driver qualifications, and other requirements unique to the commercial transportation industry and profession. The Plaintiffs' Complaint alleges that Crete negligently hired, supervised, and retained Beale as an employee.[2] It also alleges that Crete negligently entrusted its truck to Beale on the day of the accident.[3]

The parties have completed fact discovery, which included a Rule 30(b)(6) deposition of Crete. The parties have also made all expert designations and have served all expert reports due

---

[1] This motion does not affect Plaintiffs' negligence claims against Beale or their vicarious liability claims against Crete.
[2] *See* Dkt. 2-4, p. 3, ¶¶ 14 – 15.
[3] *Id.*

under the case management order. Of the experts designated by the Plaintiffs, only one, Larry Baareman, relates to the standards of care applicable to operating a commercial truck. Mr. Baareman, however, provides no opinions concerning Crete's hiring, supervision, and retention of Beale. Nor does he provide any opinions on Crete's entrustment of the truck to Beale. Without such expert testimony and evidence, the jury will be left to speculate as to Plaintiffs' direct negligence claims against Crete and whether it failed to exercise reasonable care in its hiring, supervision, and retention of Beale and its entrustment of its truck to Beale. Further, even if the Plaintiffs are not required to have an expert to establish applicable standards of care, there is no evidence to support the direct negligence claims against Crete. Plaintiffs bear the burden of establishing admissible evidence of the standard of care for a commercial transportation company and that Crete was somehow negligent. In the absence of such evidence, summary judgment is warranted.

## STATEMENT OF UNDISPUTED FACTS

For the purposes of this motion only, Defendants submit that the following facts are undisputed:

1. Crete is subject to the Federal Motor Carrier Safety Regulations. *See* **Exhibit 1**, 30(b)(6) Deposition of Crete, 99:1-3.

2. Crete operates approximately 5,000 trucks. *Id*. at 12:23-25.

3. Crete trains its drivers on general defensive driving principles that they can use for whatever situation they are in. *Id*. at 17:3-8.

4. Crete uses the Smith System to train its drivers, including Beale. *Id.* at 48:8 – 49:24.

5. Crete considers the circumstances of each driver in making employment retention

decisions. This includes looking at any history of preventable accidents, log violations, speeding tickets, or some combination of these events. *Id*. at 57:9-17.

6. In determining whether an accident was "preventable," Crete looks at the Federal Motor Carrier Regulations and uses the preventability guidelines from the American Trucking Association. *Id*. at 73:24-74:5.

7. Prior to his Crete employment, Beale attended a driving academy in 2017 put on by Swift Transportation, he had studied for and passed the written and driving tests to receive his Idaho commercial driver's license, and he had approximately four years of experience operating commercial motor vehicles. *See* **Exhibit 2**, Declaration of Matt Divito, ¶ 4.

8. Any Crete tractor that Mr. Beale operated was equipped with a fleet management software called PeopleNet. This software allowed Crete to monitor Mr. Beale's driving by creating and delivering an on-board event report to Crete whenever certain critical events, such as hard braking, stability control, and lane departure, may have occurred. Because of this, Crete was able to remotely monitor and supervise Mr. Beale's driving and safety performance. *Id*. at ¶ 5.

9. Crete also equipped Mr. Beale's tractor with an in-cab video camera for approximately 60 days after he began driving for Crete. The camera was removed after approximately 60 days because Mr. Beale showed safe driving performance during that time period. *Id*. at ¶ 6; *See also,* **Exhibit 1**, at 80:3-8.

10. Beale also graduated from Crete's training program. *See* **Exhibit 1**, at 80:3-8.

11. Beale was trained to generally try to look 15 seconds ahead in his future when operating a commercial truck. This was what the Smith System recommends. Beale was also trained that his horn was one of the devices available to him to warn other drivers when needed. *Id*. at 85:1-12.

12. Beale was trained by Crete that when making a left turn that he should yield to oncoming traffic. *Id*. at 88:1-7.

13. At its orientation, Crete provided Beale with its driver handbook, its operations manual, a copy of the Federal Motor Carrier Safety Regulations, Hazmat Guidebook, and Smith System handout. *Id.* at 99:7-19.

14. If a commercial truck driver has sleep apnea, the driver is required to pass a physical administered by a physician that meets the requirements of Department of Transportation regulations. Beale underwent a physical and sleep study and was required to use a CPAP machine to be approved to operate a commercial truck. *Id.* at 88:23-89:9.

15. In hiring any driver, federal regulations require Crete to verify the driver's prior employment driving record and drug and alcohol history. It also is required to attempt to gain verification of this information from a driver's prior employers. Crete is required to make this request, and companies are supposed to timely respond. Crete cannot control how other companies respond though. Crete made these inquiries with Beale's prior employers. *Id.* at 89:16-93:12.

16. Crete looks at the totality of a driver's safety and employment history in making a hiring decision. *Id.* at 94:18-95:2.

17. While not required by federal regulations, Crete will not hire a driver who had a preventable accident in the year prior to a driver's application. *Id.* at 94:9-17.

18. Crete obtained Beale's Motor Vehicle Record on October 13, 2022, in conjunction with his employment application. The Motor Vehicle Record confirmed that Beale had a commercial driver's license, that he met the medical requirements to drive a commercial vehicle, and that he did not have any points on his driver's license. *See* **Exhibit 2**, Declaration of Matthew DiVito, ¶ 5

19. To further verify Beale's driving safety history, Crete also obtained a pre-employment screening (PSP) report from the Federal Motor Carrier Safety Administration. It listed how many Department of Transportation inspections Beale had over a prior period and what the inspection outcomes were. *See* **Exhibit 1** at 93:13-21.

20. Plaintiffs' Complaint asserts that Crete was negligent in its hiring, supervision, and retention of Beale. It also asserts that Crete negligently entrusted the truck to Beale. *See* Dkt. 2-4, p. 3, ¶¶ 14 – 15.

21. On November 19, 2024, in accordance with the Court's scheduling order,[4] the Plaintiffs served the Expert Disclosures attached as **Exhibit 3**. Larry Baaremen was the only commercial vehicle expert disclosed. *Id*.

22. Mr. Baareman's expert report is attached as **Exhibit 4**. Pages 1 through 57 of Mr. Baareman's report is a summary of depositions taken in this case. Pages 58 through 61 contain photographs of the accident location and scene. Page 61 contains information from Crete's SMS Profile.[5] Pages 62 through 66 lists documents produced by Crete in this lawsuit. Pages 66 through 72 pastes various sections of the Utah Traffic Code, the Idaho/Utah Commercial Driver's License Manual, and various federal regulations. Page 72 lists the documents that Mr. Baareman reviewed. Pages 73 through 74 lists Mr. Baareman's conclusions.

23. Mr. Baareman's conclusions do not address or give any opinions about Crete's hiring, supervision, and retention of Beale. Mr. Baareman's conclusions also do not address Crete's entrustment of the truck to Beale. Exhibit 3, pp. 73-74.

24. There are no facts or evidence that Crete violated any law or commercial trucking standard in hiring, supervising, or retaining Beale. Likewise, there are no facts or evidence that Crete violated any law or commercial trucking standard in entrusting the truck to Beale.

---

[4] *See* Dkt. 20, p. 2.
[5] An SMS Profile is the Safety Measurement System maintained by the Federal Motor Carrier Safety Administration. *See* https://csa.fmcsa.dot.gov/about/Measure.

## ARGUMENT

### I. A PARTY BEARING THE BURDEN OF PROOF MAY NOT REST UPON ITS ALLEGATIONS TO DEFEAT SUMMARY JUDGMENT.

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.[6] A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."[7] A "genuine" factual dispute requires more than a mere scintilla of evidence.[8]

The moving party bears the initial burden of showing that there is an absence of any genuine issue of material fact.[9] Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof."[10] The nonmoving party may not rest on its pleadings but must set forth specific facts.[11] Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative.[12] "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial."[13] Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require

---

[6] Fed. R. Civ. P. 56(c); accord *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1538-39 (10th Cir.1993).
[7] *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2509.
[8] *Id.* at 252, 106 S.Ct. at 2511.
[9] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir.1991).
[10] *Applied Genetics Int'l, Inc. v. First Affiliated Securities, Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990); *see also Matsushita Elec. Indus. Co., limited, v. Zenith Radio Corporation*, 475 U.S. 574, 586-87, (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).
[11] *Applied Genetics*, 912 F.2d at 1241.
[12] *Anderson*, 477 U.S. at 250-51, 106 S.Ct. at 2510-11.
[13] *Conaway v. Smith*, 853 F.2d 789, 793 (10th Cir.1988).

submission to the jury or whether it is so one-sided that one party must prevail as a matter of law."[14] Importantly, "[p]laintiffs seeking to overcome a motion for summary judgment may not rest on mere allegations in their complaint but must set forth *specific* facts showing that there is a genuine issue for trial."[15]

## II.   THERE ARE NO FACTS THAT SUPPORT PLAINTIFFS' DIRECT NEGLIGENCE CLAIMS AGAINST CRETE.

There simply is no evidence or facts that support those claims. Crete performed a required review of Beale's safety and driving history, and Beale submitted to Crete's orientation and training requirements. Further, there are no evidence or facts prior to the accident that forms the basis of this lawsuit that Beale had a history of unsafe driving supporting the Plaintiffs' direct negligence claims against Crete. The Plaintiffs may not rest on mere allegations in their complaint but must set forth *specific* facts showing that there is a genuine issue for trial,[16] and there are no facts in this case that support their direct negligence claims.

## III.   PLAINTIFFS HAVE NOT DISCLOSED EXPERT OPINIONS TO SUPPORT THEIR DIRECT NEGLIGENCE CLAIMS AND SUMMARY JUDGMENT IS APPROPRIATE AS TO THOSE CLAIMS.

Even if there are claimed facts to support the Plaintiffs' direct negligence claims, the standard of care applicable to a commercial transportation company concerning its hiring, supervision, and retention of a driver is not within the knowledge of the lay person and requires technical and specialized knowledge. Normally, such expert testimony on standard of care would come from others in the trade or

---

[14] *Anderson* at 251-52, 106 S.Ct. at 2511-12.
[15] *Trevizo v. Adams*, 455 F.3d 1155, 1159 (10th Cir. 2006) (emphasis in original) (citation and internal quotation marks omitted).
[16] *Id*.

profession.[17] While generally "questions of ordinary negligence are properly determined by the lay juror without the need for expert testimony," such is not always the case.[18] It is well-established that "expert testimony is necessary in cases where the jury would be unable to determine the applicable standard of care without resorting to speculation."[19] While Utah courts have not specifically addressed whether a commercial transportation profession expert is required to establish claims of negligent hiring, supervision, retention and entrustment of a commercial truck driver, a review of Utah appellate decisions, as well as a recent Utah federal court rulings based upon Utah law, demonstrate that cases outside of the medical malpractice arena require expert testimony on the standard of care.[20]

*Callister v. Snowbird Corp.*, 2014 UT App. 243, 337 P.3d 1044, illustrates how Utah law recognizes exceptions to the general rule even where at first blush it appears that a jury could decide the appropriate standard of care. *Callister* involved a skier who was injured when he was struck by a ski tram as he stood outside the protective ropes surrounding the tram tower. The plaintiff failed to provide any expert on the standard of care for the tram operator. In resisting summary judgment, the plaintiff urged that the inference of negligence was so great that he need not have an expert to withstand the ski resort's motion. The plaintiff claimed that a jury could rely

---

[17] *Wessel v. Erickson Landscaping Co.,* 711 P.2d 250, 253 (Utah 1985) (expert required to support negligent landscaping design claims).
[18] G*raves v. N.E. Servs., Inc.*, 345 P.3d 619, 627 (Utah 2015).
[19] *Callister v. Snowbird Corp*., 337 P.3d 1044, 1049 (Utah App. 2014).
[20] *See* also *Nauman v. Harold K. Beecher & Assocs.*, 467 P.2d 610 (Utah 1970) (engineers); *Chadwick v. Nielsen*, 763 P.2d 817 (Utah Ct. App. 1988) (architects); *Posner v. Equity Title Ins. Agency, Inc.*, 222 P.3d 775 (Utah Ct. App. 2009) (real estate brokers); *Spafford v. Granite Credit Union*, 266 P.3d 866 (Utah App. Ct. 2011) (engineers); *Ross v. Epic Eng'g, PC*, 307 P.3d 576 (Utah Ct. App. 2013) (structural engineers); *White v. Jeppson*, 325 P.3d 888, 890 (Utah Ct. App. 2014) (financial advisors); and *Paget v. Dep't of Transp.*, 322 P.3d 1180 (Utah Ct. App. 2014) (engineers).

upon "common sense" to determine whether a ski resort had a duty to warn skiers of the risk of being hit by a low traveling tram. *Callister* affirmed summary judgment, stating:

> We conclude that expert testimony is necessary in cases where the jury would be unable to determine the applicable standard of care without resorting to speculation. <u>Thus, expert testimony is necessary in any negligence case where the particularities of the alleged standard of care do not reside within the common knowledge and experience of a lay juror.</u>[21] (Emphasis added).

*Clifford P.D. Redekop Family LLC v. Utah County Real Estate LLC*, 2016 UT App 121, 378 P. 3d 109, involved allegations that a defendant landlord overstated the square footage of a leased premises. The plaintiff resisted summary judgment without the benefit of an expert, claiming an expert was not necessary because he could measure the premises. In affirming summary judgment in favor of the landlord, the court held:

> We conclude that the district court correctly determined that the question of how square footage is calculated in commercial real estate . . . is not a question that a lay person can answer, even though such persons would likely be able, without an expert's help, to find a tape measure and a friend and measure the square footage of their own living room. For a jury to arrive at a conclusion regarding a square footage assessment in the realm of commercial real estate would indeed require the jury to engage in speculation.[22]

In *State Farm Fire and Casualty Co. v. PacifiCorp*, 2015 WL 4249901 (D. Utah), Judge Campbell was asked to consider the necessity of expert testimony on the standard of care for a utility in trimming trees in proximity to powerlines. The plaintiff's home was damaged by a fire started by trees next to the power lines. The plaintiff offered no expert but argued that both common sense and the utility company's internal policy recommendations required the trees to have been trimmed back. Judge Campbell granted summary judgment, finding:

---

[21] 337 P.3d at 1049, ¶ 15.
[22] 378 P.3d at 115-116, ¶ 18.

10

> Moreover, [plaintiff] cannot use a theory of common sense as a substitute for expert testimony. Even if it may seem logical that power lines close to trees could cause a fire, *Callister* makes clear that [plaintiff] has the burden to establish the standard of care, any breach of that standard, and causation. To meet its burden, [plaintiff] must use an expert because this is a case "where the particularities of the alleged standard of care do not reside within the common knowledge and experience of a lay juror." *Callister*, 2014 UT App 243, ¶ 15. Under *Jenkins* and *Callister*, [plaintiff] cannot establish the standard of care or breach without expert testimony. As a result, summary judgment is appropriate.

In this case, Crete's hiring, supervision, and retention of Beale along with its entrustment of the truck is subject to complex and voluminous regulations and standards the particulars of which do not reside within the common knowledge and experience of the lay juror.  As such, Plaintiffs were required to have an expert provide opinions on their direct negligence claims against Crete. Having failed to disclose any such expert opinions, summary judgment should be granted on the Plaintiffs' direct negligence claims.

## **CONCLUSION**

For the reasons above, the Plaintiffs' negligent hiring, supervision, retention, and entrustment claims should be dismissed. This case should be limited to Plaintiffs' claims of negligence against Beale and respondeat superior against Crete.

DATED this  April 1, 2025.

                                        STRONG & HANNI

                                        /s/ *John M. Zidow*
                                        Peter H. Christensen
                                        John M. Zidow
                                        Mason L. Gardner
                                        *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this April 1, 2025, a true and correct copy of the foregoing was served by the method indicated below on the following:

| | | |
|---|---|---|
| Eric S. Olson | (X) | Electronic Filing |
| Lena Daggs | ( ) | U.S. Mail, Postage Prepaid |
| **CUTT KENDELL & OLSON** | ( ) | Email |
| 900 Parkside Tower | | |
| 215 South State Street | | |
| Salt Lake City, Utah 84111 | | |
| eolson@ckolaw.com | | |
| ldaggs@ckolaw.com | | |
| *Attorneys for Plaintiff* | | |

       */s/ Edna Garcia*