IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| BRANDON JENSEN and REBECCA JENSEN,<br><br>     Plaintiffs,<br><br>v.<br><br>CRETE CARRIER CORPORATION and MICHAEL BEALE,<br><br>     Defendants. | **ORDER DENYING IN PART MOTION IN LIMINE TO EXCLUDE DAMAGES BASED ON GROSS MEDICAL BILLS**<br><br>Case No. 1:23-cv-00105-TC-JCB<br><br>Judge Tena Campbell<br>Magistrate Judge Jared C. Bennett |

  Before the court is a motion in limine to exclude damages based on gross medical bills filed by Defendants Crete Carrier Corporation (Crete) and Michael Beale. (ECF No. 124.) The court denies that motion in part. The court declines to exclude the expert testimony of Dr. Zachary McCormick but clarifies that the Defendants may introduce evidence concerning typical medical billing discounts for self-pay or uninsured individuals.

## BACKGROUND

  In this action, Plaintiffs Brandon Jensen and Rebecca Jensen claim that Mr. Beale, while turning his semi-trailer truck into the entrance to Crete's terminal, negligently caused a collision that injured Mr. Jensen. The Plaintiffs plan to introduce the testimony of Dr. McCormick, their medical expert, who will opine that Mr. Jensen's future medical expenses will cost approximately $777,955. Dr. McCormick bases his estimates on the "historical cost of care available to me from the University of Utah." (McCormick Report, Ex. 2 to Defs.' Mot. Limine

1

re: Gross Medical Bills, ECF No. 124-2 at 44.)  It is unclear from Dr. McCormick's expert report whether this historical cost of care represents gross charges, payer-specific negotiated charges, or some other amount.[1]

Under federal law, hospitals must publish "a list of the hospital's standard charges for items and services provided by the hospital."  45 C.F.R. § 180.10.  This list must include: 1) the gross charge; 2) the discounted price for individuals who self-pay; 3) the payer-specific negotiated charge, which is the amount a hospital has negotiated with a third-party (such as an insurance company); and 4) the "[d]e-identified maximum" and "[d]e-identified minimum[,]" figures that represent the highest and lowest charge a hospital has negotiated with all third-party payers.  Id. §§ 180.20, 180.50(b).  It is "typical in the [healthcare] industry" for a health insurer to negotiate "a lower rate for health care services for its policy holders than any member of the uninsured general public is able to bargain for, resulting in a discounted medical bill."  Tschaggeny v. Milbank Ins. Co., 163 P.3d 615, 618 (Utah 2007).

The Defendants argue that the court should exclude Dr. McCormick's report for failure to comply with the Utah Supreme Court's opinion in Gardner v. Norman, No. 20240344, 2025 WL 3030153 (Utah Oct. 30, 2025), which was issued just over a week ago.  In that decision, the Court held that the proper measurement of special damages for past medical expenses is the negotiated—not the gross—charge for services. Id. at *8.  Although Dr. McCormick's report focuses on future, not past, medical expenses, the Defendants argue that the same logic applies and that any estimates for future services based on gross charges are inadmissible under Gardner.

---

[1] For the purposes of this order, the court assumes that Dr. McCormick's expert report is based on gross charges.  The court denies without prejudice the Defendants' challenge to his report to the extent that their challenge is based on the lack of foundation about whether the figures represent gross charges or payer-negotiated charges.  The court will question Dr. McCormick about the source of his figures before determining the admissibility of his testimony.

The Defendants also maintain that Dr. McCormick's report lacks foundation due to his failure to explain whether his estimates are based on gross charges or other rates.

The Plaintiffs counter that the Court in <u>Gardner</u> expressly declined to address the admissibility of evidence of gross charges to prove future medical expenses: "And we express no opinion on the relevance or admissibility of this evidence on other issues, such as noneconomic damages or future medical expenses." <u>Id.</u> (quotation omitted). The Plaintiffs represent that when the Utah Supreme Court issued the <u>Gardner</u> decision, the Plaintiffs "offered to waive Mr. Jensen's claim for past medical expenses in exchange for Defendants not seeking to introduce evidence of Mr. Jensen's past medical expenses." (Pls.' Resp. Mot. Limine re: Gross Medical Expenses, ECF No. 128 at 2.) But the Defendants refused this offer. (<u>Id.</u>)

## LEGAL STANDARD

Because the court has jurisdiction to hear this action under 28 U.S.C. § 1332, Utah substantive law governs this case. <u>See</u> <u>Erie R. Co. v. Tompkins</u>, 304 U.S. 64, 78–79 (1938) (holding that when cases come before federal courts through diversity jurisdiction, federal courts apply the substantive law of the state where they sit). But "[i]f the state's highest court has not addressed the issue presented, the federal court must determine what decision the state court would make if faced with the same facts and issue." <u>Armijo v. Ex. Cam, Inc.</u>, 843 F.2d 406, 407 (10th Cir. 1988) (noting that to predict what a state's highest court would do, federal courts should consider "state court decisions, decisions of other states, federal decisions, and the general weight and trend of authority").

## ANALYSIS

The dispute between the parties presents an issue of first impression. The court disagrees with the Defendants that "evidence of gross charges for an injured party's medical bills … is

3

now clearly inadmissible." (ECF No. 124 at 2.) As noted above, the Utah Supreme Court was clear that its decision in Gardner concerned only the admissibility of such evidence to prove past medical expenses, not future medical expenses. Gardner, 2025 WL 3030153, at *8. But the court also takes issue with the Plaintiffs' suggestion that "[i]f the Utah Supreme Court wanted the bar on gross charges to extend to future medical expenses, it certainly could have held as such." (ECF No. 128 at 4.) Future medical expenses were simply not at issue in Gardner. See Gardner, 2025 WL 3030153, at *1 (discussing only the plaintiff's past medical expenses for an emergency room visit). The Court's circumspection indicates nothing more than judicial restraint and the desire to avoid an advisory opinion based on hypothetical facts. But here, this court must squarely address the issue because Mr. Jensen has requested future medical expenses. This court must therefore determine how the Utah Supreme Court would rule on the admissibility of gross charges to prove future medical expenses if it were presented with similar facts.

To make this determination, the court looks foremost to the holding and reasoning in Gardner. There, the Utah Supreme Court first summarized the basic principles Utah law on special damages, noting that "a plaintiff may recover medical expenses that are reasonable and necessary[,]" id. at *4 (quoting Wilson v. IHC Hosps., Inc., 289 P.3d 369, 382 (Utah 2012)), and that "evidence is required to show that the medical expenses accurately reflect the necessary treatment that resulted from injury and that the charges are reasonable." Id. (quoting Gorostieta v. Parkinson, 17 P.3d 1110, 1118 (Utah 2000)). Under Utah law, a plaintiff is limited to recovering the lesser of the reasonable value of the services (regardless of the amount paid or charged) or the amount paid (if the plaintiff paid less than the exchange rate). See Restatement (Second) of Torts § 911 cmt. h (A.L.I. 1979).

4

The Utah Supreme Court then explained the application of the collateral source rule under Utah law, and it is worth quoting this discussion in full:

> When a third party covers all or part of a plaintiff's medical expenses, the collateral source rule is implicated. Under this rule, wrongdoers are not entitled to have damages, for which they are liable, reduced by proof that the plaintiff has received or will receive compensation or indemnity for the loss from an independent collateral source. In its application, the collateral source rule has both an evidentiary and a damages aspect.
>
> The evidentiary aspect precludes both explicit reference and methodical allusion to collateral source benefits. It has long been recognized that evidence of collateral source benefits involves a substantial likelihood of prejudicial impact. That prejudice may occur in two ways. First, evidence of payment from a collateral source suggests that a plaintiff is already any necessary care, which may lead the jury to believe that the outcome of the trial is immaterial to the party benefitting from the collateral source. Second, because many jurors do not understand the concept of subrogation rights, they will erroneously conclude that the plaintiff is seeking a windfall. This misunderstanding is highly prejudicial because the jury will believe that the plaintiff has already been fully compensated and is trying to obtain a double recovery, thereby tainting the jury's decision-making process.
>
> The damages aspect prevents a plaintiff's recovery from being offset by any payments provided by an independent collateral source. Put simply, payments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable. This means that the plaintiff may recover medical expenses already paid by the plaintiff's insurance even when it results in a windfall to the plaintiff based on the premise that the plaintiff victim, rather than the defendant tortfeasor, should be the beneficiary of any windfall. The rule is also intended to encourage the maintenance of insurance by assuring that a plaintiff's payments from a collateral source will not be reduced by a subsequent judgment.

Gardner, 2025 WL 3030153, at *4–5 (cleaned up).

Finally, the Utah Supreme Court surveyed the approaches adopted by other states to the question of negotiated charges and grouped those approaches in three buckets: 1) states in which the outcome was dictated by state statutes modifying the collateral source rule; 2) states in which courts allowed the admission of both the gross rate and the negotiated rate as evidence of the

reasonable value of medical care; and 3) states in which courts precluded recovery based on the gross charge by either excluding evidence of the gross charge or reducing the damages award post-verdict.  Id. at *5.  The Court found especially persuasive the third approach, which was typified by a decision from the California Supreme Court in which that Court held that the collateral source rule was inapplicable to negotiated rates where providers had already agreed upon a different price schedule at the time the charges were incurred.  Howell v. Hamilton Meats & Provisions, Inc., 257 P.3d 1130, 1143 (Cal. 2011).  Accordingly, the California Supreme Court determined that "the collateral source rule should not extend so far as to permit recovery for sums neither the plaintiff nor any collateral source will ever be obligated to pay."  Id. (cleaned up).

Adopting the California approach, the Utah Supreme Court found that cost of the medical services that the plaintiff received was "limited to the preexisting negotiated charges."  Gardner, 2025 WL 3030153, at *6.  Accordingly, the Court held that the appropriate measure of special damages for past medical expenses must be based on the amount of the negotiated charge, which reflects the actual loss incurred, rather than the gross charges.  Id. at *8.

The Court emphasized that its holding did not modify the collateral source rule.  Id.  Because "no one pays the difference between the gross charge and the negotiated charge, admitting evidence of the predetermined reduction does not violate the purpose behind the collateral-source rule."  Id. at *7 (cleaned up).  Accordingly, "[b]oth the evidentiary and damages aspects of the collateral source rule remain in full effect, except where abrogated by statute."[2]

---

[2] The Utah Legislature has altered the collateral source rule for medical malpractice claims.  See generally Utah Code Ann. § 78B-3-405.  For damages in malpractice claims, "the court shall reduce the amount of the award by the total of all amounts paid to the plaintiff from all collateral sources[,]" except where a collateral source has a subrogation right or the collateral payment was not included in the damages award.  Id. § 78B-3-405(1).

6

Id. at *8.

But the Court cautioned that "we do not go so far as to hold that evidence of gross charges is never admissible." Id. (emphasis added). As one example, the Court observed that such evidence could be relevant to a dispute over the reasonableness of a negotiated charge. Id. But the Court warned that, even then, the risk of prejudice might substantially outweigh the probative value of such evidence, "especially if its admission risks violating the collateral source rule by revealing that the cost was covered, in whole or in part, by insurance." Id. And as previously noted, the Court expressed no opinion on the "'relevance or admissibility' of this evidence 'on other issues, such as noneconomic damages or future medical expenses.'" Id. (quoting Howell, 257 P.3d at 1146).

This court discerns two important principles underlying the Utah Supreme Court's decision. First, the Court was careful to uphold both the evidentiary and damages aspects of the collateral source rule by excluding discussion about a plaintiff's insurance and any evidence of payments that insurance made on a plaintiff's behalf. Second, the Court's ruling recognized that the medical system in the United States has evolved in such a way that the gross charges billed to a patient do not reflect a patient's out-of-expenses as accurately as the negotiated charges that are actually paid, and that Utah law on special damages only allows for evidence of the more accurate amount.

For past medical expenses, the application of these two principles is relatively straightforward. By limiting a plaintiff to evidence of the negotiated charges, a plaintiff can only recover expenses that were actually incurred. And a jury will not be encouraged to speculate about the existence of a plaintiff's insurance because the jury will not hear evidence about the difference between the gross charges and the negotiated rate.

But for future medical expenses, the application of these principles is less obvious. There is clear evidence of the negotiated rate for past medical expenses, whereas the negotiated rate for future medical expenses is speculative. An insurance company may negotiate new and potentially higher rates before a plaintiff receives a needed procedure, or the plaintiff may lose their current health insurance due to a loss of employment or increases in the rate of premiums. A plaintiff may also become eligible for Medicare or Medicaid, and under those programs there would likely be different negotiated rates for the costs of services. Presenting these issues to the jury could cause the jury to speculate about whether a plaintiff will be paid from a collateral source—a speculation that the evidentiary aspect of the collateral source rule attempts to avoid.

The parties have presented contrasting views about how this court should rule on the admissibility of gross charges for future medical expenses. The Defendants argue that this evidence should be excluded, a suggestion that has support from California court rulings subsequent to the California Supreme Court's decision in Howell. In Corenbaum v. Lampkin, a California court of appeal held that gross charges were inadmissible as evidence of future medical expenses:

> Howell stated that the full amount billed is not an accurate measure of the value of medical services, that there can be significant disparities between the amounts charged by medical providers and the costs of providing services and that the price of a particular service can vary tremendously from hospital to hospital in California and a medical provider's billed price for particular services is not necessarily representative of either the cost of providing those services or their market value. These and other observations in Howell compel the conclusion that the full amount billed by medical providers is not relevant to the value of past medical services. For the same reason, the full amount billed for past medical services is not relevant to a determination of the reasonable value of future medical services.

156 Cal. Rptr. 3d 347, 362–63 (Cal. Ct. App. 2013) (cleaned up).

The California approach has the advantage of simplicity: it avoids any confusion that

might be caused by presenting the jury with evidence of negotiated charges for past medical expenses while simultaneously presenting evidence of gross charges for future medical expenses. See id. at 363 (noting that the difference between gross charges and negotiated charges could suggest the existence of a collateral source payment in violation of the evidentiary aspect of the collateral source rule).  But the court is skeptical that the Utah Supreme Court would adopt the California approach wholesale.  The Utah Supreme Court did not cite to the portion of the Howell opinion stating that the full amount billed was not an accurate measure of the value of medical services.  Rather, the Utah Supreme Court noted: "<u>Even if the gross charges reflect a reasonable cost of necessary treatment resulting from the injury</u>, they do not represent the cost of the medical services that [the plaintiff] received, which was limited to the preexisting negotiated charges."  Gardner, 2025 WL 3030153, at *6 (emphasis added).  And elsewhere the Court noted that evidence of gross charges could be admissible in some instances, such as where the reasonableness of the negotiated charge was in dispute.  Id. at *8.

      But most importantly, the Corenbaum court failed to consider any arguments about the speculative nature of a plaintiff's future negotiated costs.  The decision simply assumed that a plaintiff would continue to have the same health insurance—an assumption which generally depends on the plaintiff's continued employment and their ability to afford health insurance premiums.  As noted above, many plaintiffs seeking future medical expenses will qualify for Medicare or Medicaid at some point.  The California approach assumes that the negotiated rates available under these programs will be the same as the negotiated rates available with the plaintiff's current insurance.  And it is unclear how plaintiffs could challenge any of these assumptions.  A plaintiff would need to introduce evidence about when and why they might lose or change health insurance, a clear transgression of the evidentiary aspect of the collateral source

rule that prohibits the jury from considering these concerns. Indeed, the <u>Corenbaum</u> decision does not explain <u>how</u> a plaintiff should introduce competent evidence of negotiated rates for future medical expenses. This evidence may be available where a plaintiff requests payment for the same types of treatment the plaintiff has already received. But here, for instance, Dr. McCormick opines that Mr. Jensen will require the implantation of a peripheral nerve stimulator—a treatment that appears to be unlike any procedure Mr. Jensen has already undergone. Because there are no past bills showing the negotiated rate for this procedure, Dr. McCormick would be required to testify about the type of discount that Mr. Jensen could expect to receive based on the negotiations between the hospital and his health insurance—again, a violation of the evidentiary aspect of the collateral source rule.

 Finally, the court notes that California courts have modified the rule in <u>Corenbaum</u> in some situations. For instance, in a case in which a medical provider sought interpleaded funds, a California court of appeal upheld the admission of a bill including the gross charges for services but found that the hospital must present additional evidence that the services rendered were necessary. <u>State Farm Mut. Auto. Ins. Co. v. Huff</u>, 157 Cal. Rptr. 3d 863, 869 (Cal. Ct. App. 2013). More importantly, a California court of appeal found that where a plaintiff is uninsured, the gross charges are not only relevant to determining the amount incurred by the plaintiff but also to the reasonable value of medical services rendered. <u>Bermudez v. Ciolek</u>, 188 Cal. Rptr. 3d 820, 839 (Cal. Ct. App. 2015). Nevertheless, the court held that such evidence alone was insufficient to determine the reasonable value of medical services and suggested that the court should adopt a "wide-ranging inquiry" to make this determination for uninsured plaintiffs. <u>Id.</u> at 835. The court did not define the scope of this inquiry.

 To avoid such an open-ended inquiry, and for the other reasons discussed above, this

court is not persuaded that the Utah Supreme Court would adopt the California approach. In Gardner, the Court emphasized that the negotiated charges at issue were the result of a "preexisting contractual arrangement between the insurer and healthcare provider." 2025 WL 3030153, at *7; see also id. (describing a negotiated charge as a "predetermined reduction"). There is no indication that the Court would disregard uncertainties about the amount of that negotiated charge in the future—or about whether a plaintiff would continue to have the same or any insurance.

In contrast to the decisions from the California courts, the Plaintiffs urge this court to find that the holding in Gardner is irrelevant to the admissibility of gross medical bills as evidence of future medical expenses. In support, the Plaintiffs rely on a case from a trial court in Pennsylvania that was cited by the Utah Supreme Court as an example of the type of approach to past medical expenses that the Court found persuasive. See id. *5 n.6 (citing Sliker v. Nat'l Feeding Sys., Inc., No. 282 CD 2010, 2015 WL 13779690, at *8 (Pa. Ct. Com. Pl. Oct. 19, 2015)).

In Sliker, the defendants objected to the plaintiff's expert report on the grounds that the report contained total costs of estimated medical services rather than the Medicare fee schedule which Medicare-accepting health providers were compelled to follow. 2015 WL 13779690, at *8. The trial court followed the rule adopted by the Pennsylvania Supreme Court that "the amount paid and accepted by a health care provider as payment in full for medical services was the amount plaintiff was entitled to recover as compensatory medical damages." Id. (citing Moorhead v. Crozer Chester Med. Ctr., 765 A.2d 786, 789 (Pa. 2001)). But the court declined to extend that reasoning for future medical expenses:

> The rationale of Moorhead does not bear the application of its holding [the defendants] seek here. In that case, the contested medical expenses had already

11

> been incurred and paid in full by the reduced amount which the plaintiff's claim for compensatory damages was limited to. The rationale of Moorhead explicitly contrasts a hypothetical situation where "a plaintiff will continue to incur expenses for medical services," in which case "it is appropriate for the factfinder to determine the amount of damages which will compensate the plaintiff for those expenses that are reasonably necessary to be incurred," with the situation in that case, where the exact amount of past expenses had already been established, those expenses had been satisfied, and "there is no longer any issue as to the amount of expense for which the plaintiff will be liable."

Id. at *9 (citing Moorhead, 765 A.2d at 789). The court therefore overruled the defendants' objections to the report and held that the plaintiff could introduce evidence of the total costs. Id.

The Pennsylvania approach avoids any speculation about a plaintiff's future health insurance or eligibility for government programs, thereby honoring the evidentiary aspect of the collateral source rule. But the trial court in Sliker did not consider the argument that the gross charges are only rarely, if ever, collected, or the fact that a plaintiff would likely pay less than the posted charge even if the plaintiff were not eligible for a government program and did not have health insurance. The Utah Supreme Court favorably cited the California Supreme Court's reasoning that "the collateral source rule should not extend so far as to permit recovery for sums neither the plaintiff nor any collateral source will every be obligated to pay." Gardner, 2025 WL 3030153, at *6 (citing Howell, 257 P.3d at 1143). As a result, this court is not persuaded that the Utah Supreme Court would follow the Pennsylvania trial court ruling.

Given the difficulties presented by both the California and Pennsylvania approaches, the court finds that the Utah Supreme Court is likely to adopt a third path that addresses more adequately the concerns and principles underlying the Gardner decision. Specifically, the court finds that the Utah Supreme Court would likely find admissible evidence of gross medical bills for future medical expenses, but that the Court would also likely allow a defendant to rebut that testimony with evidence about the standard discount available to uninsured individuals.

This approach avoids any speculation about the application of negotiated rates to treatments that a plaintiff has yet to receive, as well as uncertainties about the continued existence of comparable rates or, worse, testimony about whether the plaintiff will be able to maintain the same health insurance. But this approach also acknowledges the reality that a plaintiff will rarely, if ever, be charged the full listed price for medical services. Where a defendant can present competent evidence that a hospital applies a standard discount for uninsured individuals, the defendant should be able to take advantage of that discount. A defendant should not, however, be permitted to suggest that a plaintiff will receive a greater discount due to insurance or a government program, as such testimony is unduly speculative and risks awarding damages that are insufficient to fully compensate the plaintiff where the plaintiff is unable to maintain insurance or where negotiated rates change. True, preventing the defendant from bringing up such considerations may mean that the plaintiff will receive a windfall due to the difference between the uninsured and the negotiated rate. But the collateral source rule awards plaintiffs a similar windfall in some instances. "If the collateral source lacked subrogation rights, for instance, the rule contemplates that 'the plaintiff victim, rather than the defendant tortfeasor, should be the beneficiary of any windfall.'" Gardner, 2025 WL 3030153, at *7 (quoting Mahana v. Onyx Acceptance Corp., 96 P.3d 893, 901 (Utah 2004)).

The court's approach treats a plaintiff seeking future medical expense in a manner congruent with the collateral source rule: by disregarding any consideration of whether the plaintiff has insurance. The Gardner decision is not really an exception to this rule, because the effect of the plaintiff's insurance is predetermined, conclusively known, and does not require any discussion of the existence of that insurance in front of the jury. Because subrogation rights are likely to confuse the jury and may not be conclusive, the collateral source rule simply asks the

13

jury to assume that the plaintiff is uninsured and leave any necessary adjustments to the court.[3] Similarly, because the application and existence of negotiated rates to future treatments is unduly speculative, the jury should calculate an award for future medical expenses that would fully compensate an uninsured individual. But a defendant should be able to take advantage of the reality that hospitals provide discounts off gross charges even to uninsured patients.

The Utah Supreme Court specifically discussed these discounts, noting that there are often predetermined rates for those who are uninsured and observing that the discrepancy between negotiated rates for insured people and discounts for uninsured people may not be that large:

> We also recognize that the disparity between an insured and uninsured plaintiff may not be as great as [the plaintiff] suggests. As with insured individuals, predetermined discounted rates exist for those who are uninsured. By way of example, the hospital where [the plaintiff] received care has posted rates showing that an uninsured individual receiving the same treatment as [the plaintiff] would receive about a twenty-five percent discount. The adjusted charge for an uninsured patient would be greater than the negotiated charge [the plaintiff] incurred, but in both cases, the gross charge would not reflect the medical expenses they each incurred, regardless of their insurance status.

Gardner, 2025 WL 3030153, at *7 n.7. The court therefore finds it likely that the Utah Supreme Court would allow defendants to take advantage of probable discounts for uninsured individuals without forcing plaintiffs to speculate about the application of future negotiated rates.

---

[3] The parties have stipulated to the following jury instruction concerning collateral source payments:

> You shall award damages in an amount that fully compensates Brandon Jensen and Rebecca Jensen. Do not speculate on or consider any other possible sources of benefit Brandon Jensen and Rebecca Jensen may have received. After you have returned your verdict, I will make whatever adjustments may be appropriate.

(Proposed Joint Instruction No. 33, ECF No. 131 at 36.)

Candidly, the court recognizes that one disadvantage of its approach is the potential for jury confusion due to the use of different calculation methods for past and future medical expenses. Here, the Plaintiffs "offered to waive Mr. Jensen's claim for past medical expenses in exchange for Defendants not seeking to introduce evidence of Mr. Jensen's past medical expenses." Given the Defendants' refusal of that offer, it is unclear whether the Plaintiffs still plan to forego testimony about Mr. Jensen's past medical expenses. If they do, then there is little risk of confusion.[4] If they do not, then the court must fashion a limiting instruction to the jury to explain the appropriate calculation of past and future medical expenses. The court finds that any potential confusion is a lesser evil than the uncertainty introduced by asking the jury to speculate about the existence and application of negotiated rates to procedures that have not been performed. In any event, there is a limit to how much the court can reduce the complexities of the medical system in the United States—the court must trust that jurors will be somewhat familiar with those complexities and willing to follow the court's instructions.

The court notes that its ruling places the burden of establishing a standard discount rate for uninsured individuals on the defendants. This burden shifting is consistent with Utah law on damages, as the Utah Supreme Court has held that "[t]he level of persuasiveness required to establish the <u>fact</u> of loss is generally higher than that required to establish the <u>amount</u> of a loss. It is, after all, the wrongdoer, rather than the injured party, who should bear the burden of some

---

[4] Although not directly raised by the Defendants in their motion in limine, the court agrees with the Plaintiffs that evidence of past medical expenses is irrelevant if the Plaintiffs waive their request for these damages. Mr. Jensen's future medical costs should be based on competent evidence about the treatments that Mr. Jensen is likely to require in the future, not any treatments he received in the past. The parties have only briefly addressed this question, citing minute entries and other brief orders by various district state trial courts that do not contain any reasoning. To the extent the Defendants believe there is caselaw that supports their position, the Defendants should raise this issue directly in a written motion before the Plaintiffs begin their presentation of evidence on November 12, 2025.

uncertainty in the amount of damages." Atkin Wright & Miles v. Mtn. States Tel. & Telegraph Co., 709 P.2d 330, 336 (Utah 1985). And if there is no competent evidence that a hospital offers such a discount and is likely to continue offering that discount, the defendants should not be able to take advantage of a reduced award. But hospitals are required to post information about discounted prices for self-pay individuals, see 45 C.F.R. § 180.50(b), so this evidence does not generally appear overly burdensome to uncover.[5]

### ORDER

For the foregoing reasons, the court DENIES IN PART the Defendants' Motion in Limine to Exclude Damages Based on Gross Medical Bills. (ECF No. 124.) The Plaintiffs may introduce the expert testimony of Dr. McCormick to the extent that his report presents evidence of gross charges for future medical expenses. But the Defendants may present evidence of the standard discount available to self-pay patients for those charges. In addition, the Defendants may raise questions about the foundation for Dr. McCormick's testimony to the extent that his report is based on other measures of future medical expenses. Before allowing the jury to hear that testimony, the court will conduct voir dire of the witness to determine whether his expert testimony complies with Rules 702 and 703 of the Federal Rules of Evidence. Because the court has only addressed the issue raised by the Defendants concerning gross charges, this order expresses no opinion on whether estimates of medical expenses based on other measures that Dr. McCormick may have considered are admissible.

---

[5] As the Defendants have noted, the discount for uninsured individuals receiving treatment from University of Utah Health is readily available on the University's website. Available at: https://healthcare.utah.edu/pricing (last accessed Nov. 10, 2025) (listing a 30% discount on all services for self-pay patients). The court notes that this discount may not always be applied across the board. For instance, it is unclear if the University of Utah Health discount applies to medications as well as services.

16

DATED this 10th day of November, 2025.

BY THE COURT:

*Tena Campbell*
Tena Campbell
United States District Judge